UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| KENNETH ECKERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 5:22-CV-00316-MAS |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| *Commissioner of SSA*, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Kenneth Eckert ("Eckert") appeals the Commissioner's denial of his application for Supplemental Security Income ("SSI") Title XVI of the Social Security Act. The Court considers the parties' competing Motions for Summary Judgment. [DE 13; DE 15].

For the reasons discussed below, the Court finds that the Administrative Law Judge's ("ALJ") decision failed to apply correct legal standards established under 20 C.F.R. § 416.920c. Accordingly, the Commissioner's final decision is hereby **REMANDED** for additional proceedings consistent with this Opinion.

1

I.  **FACTS AND PROCEDURAL HISTORY**

Kenneth Eckert ("Eckert") protectively filed an application for SSI on October 14, 2020. [Administrative Transcript[1] ("TR") at 103]. Eckert alleges his disability began on October 14, 2020. [TR at 103]. His claims were denied initially on January 26, 2021, and upon reconsideration on March 30, 2021. ALJ Jerry Lovitt conducted a telephone hearing on October 7, 2021. Eckert and an impartial vocational expert ("VE") appeared and testified. Ultimately, ALJ Lovitt issued an unfavorable decision on October 21, 2021. [TR at 13].

On the alleged date that his disability began, Eckert was 37 years old. [TR at 166]. Eckert's application was based on his alleged physical impairments affecting his back, hips, and feet; and mental health impairments. In conducting the residual functioning capacity ("RFC") analysis, the ALJ considered Eckert's self-reported symptoms and determined they were not entirely consistent with other evidence, medical and non-medical. [TR at 24]. The ALJ considered a physical examination conducted by consultative examiner Dr. Ifeanyi Nzegwu [TR at 235–39]; examinations conducted by consultative examiners Drs. S. Kavka [TRA at 97–99] and P. Saranga [TR at 104–07]; and records from Kenny Orthopedics, Bourbon Community Hospital [TR at 381–419], Clark Regional Hospital, Clark Clinic Primary

---

[1] The Administrative Transcript ("TR") is docketed at DE 10-3, 10-4, 10-5,- 10-6, 10-7, 10-8, 10-9, and 10-10. The Court shall utilize the pagination generated by the Commissioner when referencing the transcript. Any references to subsequently filed supplements to the Administrative Transcript shall utilize the Court's pagination.

Care [TR at 420–88], Eastern State Hospital [TR at 311–381], and New Vista [TR at 489–535].

The ALJ determined that Eckert's substance use disorder, degenerative disc disease, left foot and ankle dysfunction, degenerative joint disease of the hip, bipolar disorder, and depression were severe, but found that his obesity was non-severe.[2] [TR at 19]. However, the ALJ found that his severe impairments, combined or individually, did not meet the requisite level of severity outlined in the applicable listings. [TR at 20]. Accordingly, the ALJ determined that he did have the RFC to perform light work, with the following limitations:

> [H]e can occasionally climb ramps and/or stairs, and he can occasionally balance, stoop, kneel, and crouch. The claimant can occasionally push foot controls with the bilateral lower extremities, but he cannot crawl or climb of ladders, ropes, or scaffolds. The claimant should have no exposure to unprotected heights or workplace hazards, such as dangerous machinery that fails to stop once human contact is lost, and he should have no more than frequent exposure to temperature extremes and vibration. The claimant is able to understand, remember, and carry out simple, routine instructions, and he is able to sustain concentration while completing simple, repetitive, and routine tasks. The claimant can use judgment in making simple work-related decisions consistent with this type of work and requires an occupation with an established and predictable routine; with set procedures in place; and with minimal changes occurring during the workday.

[TR at 22]. As Eckert did not have past relevant work, the ALJ relied on the VE's testimony to determine that there were jobs that Eckert could perform that exist in significant numbers in the national economy: cashier, mail clerk, and inspector,

---

[2] The ALJ noted that during the period between when Eckert applied for benefits and the hearing, he lost roughly one hundred pounds and is no longer obese. [TR at 16–17].

3

which are light and unskilled vocations according to the Dictionary of Occupation Titles ("DOT"). [TR at 27].

Ultimately, the ALJ rendered an unfavorable decision. Eckert appealed the ALJ's decision to the Appeals Council, which denied his request for review. [TR at 1]. This appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) followed.

## II. STANDARD OF REVIEW

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decisionmakers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the

4

entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the

claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4).

### III. ANALYSIS

Eckert argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinion of a consultative examining physician, Dr. Ifeanyi Nzegwu. [DE 13-1, PageID# 1053]. Specifically, he avers that the ALJ failed to properly consider whether Dr. Nzegwu's opinions were supported by or consistent with the other record evidence, as required by 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).[3] [DE 13-1, PageID# 1056].

Many of Eckert's arguments regarding the sufficiency of the ALJ's analysis invoke regulation language to argue that Dr. Nzegwu's opinions are consistent with and supported by the evidence of record. This is a substantial evidence argument, not an argument that the ALJ did not follow social security regulations. After all, an ALJ's decision may nonetheless be supported by substantial evidence, even if

---

[3] Note that 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2) contain identical language regarding how the Commissioner is required to evaluate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. The former subsection, § 404.1520c concerns applications for Disability Insurance Benefits ("DIB"), while the latter, § 416.920c, concerns applications for SSI. Here, Eckert has solely applied for SSI, so the Court need not assess whether the Commissioner complied with § 404.1520c.

6

evidence also could support the opposite conclusion. *Warner*, 375 F.3d at 393. Thus, the Court first focuses its analysis on whether the ALJ adhered to social security regulations, not whether the ALJ came to the wrong conclusion on a substantial evidence basis. To do otherwise would merely result in the improper reweighing of evidence.

For claims filed March 27, 2017, or later, the agency does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a).[4] Instead, the Commissioner "will articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 416.920c(b) (emphasis added).

The new regulations provide that "administrative law judges will now evaluate the 'persuasiveness' of medical opinions by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation." *Jones v. Comm'r of Soc. Sec.*, No. 3:19-CV-01102, 2020 U.S. Dist. LEXIS 62143, 2020 WL 1703735, at *2 (N.D. Ohio

---

[4] Social security regulations define medical opinions as statements "from a medical source about what [the claimant] can still do despite [his or her] impairment(s)[.]" 20 C.F.R. § 416.913(a)(2). Medical opinions also include a medical source's statements about a claimant's ability to (1) "perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions"; (2) "perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;" (3) "perform other demands of work, such as seeing, hearing, or using other senses;" and (4) "adapt to environmental conditions, such as temperature extremes or fumes." *Id.* at (i)–(iv).

7

Apr. 8, 2020) (quoting *Gower v. Saul*, 2020 U.S. Dist. LEXIS 39826, 2020 WL 1151069, at * 4 (W.D. Ky, March 9, 2020) (citing 20 C.F.R. § 404.1520c(a) and (b)); see also *Ryan L. F. v. Comm'r of Soc. Sec.*, No. 6:18-CV-01958-BR, 2019 U.S. Dist. LEXIS 207152, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'") (citing 20 C.F.R. §§ 404.1520c(a), (b) (1), 416.920c(a) and (b)(1)) (alterations in original)).

The five factors to be evaluated are supportability, consistency, relationship with the claimant, specialization, and other factors, but supportability and consistency are acknowledged to be the most important factors for consideration. 20 C.F.R. § 416.920c(c)(1)–(5); 20 C.F.R. § 416.920c(b)(2). The regulations define "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations define "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

8

Turning to the consistency factor, the ALJ discussed Dr. Nzegwu's medical opinions, including that "claimant would not be able to sit, walk, and/or stand for a full workday, and his ability to lift and/or carry was limited by his left lower extremity impairment" and that "claimant could respond appropriately to questions and he could remember and carry out instructions." [TR at 27]. The ALJ found that the portion of Dr. Nzegwu's opinion as to sitting, standing, and walking was not persuasive because it was not "consistent with the overall and somewhat sparse and intermittent medical evidence of record" and because it "rel[ies] heavily on claimant's self-reporting symptoms" as opposed to objective or clinical criteria. [TR at 27]. The ALJ goes on to opine that Dr. Nzegwu's medical opinions are also internally inconsistent. [TR at 27]. He underscores that the thoracic spine imaging conducted by Dr. Nzegwu showed a normal alignment and no degenerative changes. [TR at 27].

This Court has cautioned against using vague assertions, such as gesturing to "objective medical evidence" when evaluating consistency and supportability of medical opinions, as such assertions do not create the required "logical bridge" between a medical opinion as the evidence of record as a whole. *Terhune v. Kijakazi*, No. 3:21-CV-37-KKC, 2022 U.S. Dist. LEXIS 130309, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022) (quoting *White v. Comm'r of Soc. Sec.*, 2021 WL 858662 at *21, 2021 U.S. Dist. LEXIS 43162 at *59 (N.D. Ohio Mar. 8, 2021)). However, the ALJ's analysis of consistency factor narrowly prevails because the ALJ evaluated the consistency of Dr. Nzegwu's opinions by juxtaposing them against other evidence in the record, explicitly pointing to Eckert's thoracic imaging and self-reported

9

symptoms. This supports a finding that the ALJ followed social security regulations at least as to the consistency factor.

However, the ALJ's analysis of the supportability factor falls short of the minimum required under social security regulations. The ALJ's discussion of the supportability of Dr. Nzegwu's opinions is as follows:

> The lifting and carrying limitations are vague, as no specific limitation was included, but were somewhat persuasive as they were supported by a majority of the objective medical evidence. The mental statement was somewhat persuasive as it was supported by a majority of the objective medical evidence, but it should be noted this statement was given at the end of a physical examination. The claimant's extremity strength was five out five with the exception of the left lower extremity, which had four out of five strength (Ex. B2F/2).
>
> . . .
>
> In light of all the foregoing, the undersigned Administrative Law Judge finds that the overall medical evidence is not properly supportive of total disability based upon the objective clinical findings, the longitudinal treatment history, and the totality of the evidence.

[TR at 27].

Here, the ALJ's analysis of supportability again vaguely waves to "a majority of the objective medical evidence" supporting Eckert's lifting and carrying limitations and Eckert's mental statement. The Court cannot identify what specific medical evidence he utilized when devising how persuasive it was to his decision. While the ALJ is not required to articulate how he considered every opinion, he must still provide some analysis using *at least* the consistency and supportability factors. *See* 20 C.F.R. § 416.920c(b)(1). The Commissioner contends, "a reasonable reading of the ALJ's decision shows that he sufficiently considered the supportability and consistency factors in evaluating Dr. Nzegwu's opinion." [DE 15, PageID# 1068]. But

10

the Commissioner also readily admits that details regarding the objective medical evidence are simply located earlier in the ALJ's decision rather than in the ALJ's analyses of the consistency and supportability factors. [DE 8, PageID# 1067].

"The ALJ is not required to discuss every detail presented in the 'voluminous case records' nor does she need to explain her evaluation of each portion of a medical source's opinion." *Ebeling v. Comm'r of Soc. Sec.*, No. 21-CV-00115, 2022 WL 3006209, at *3 (W.D. Ky. July 28, 2022) (citing 20 C.F.R. § 404.1520c(b)). The Court deduces that the ALJ did, in fact, consider supportability in determining the persuasiveness of the medical and nonmedical evidence of record when he stated that he took "particular note of the degree to which an opinion was properly supported by an explanation with relevant clinical evidence, such as any corroborating objective medical signs and/or laboratory findings." [TR at 27]. However, the ALJ does not actually commit his analyses to paper, such that this Court can adequately assess how he reached his conclusions. "[T]he measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune*, 2022 WL 2910002, at *3, 2022, U.S. Dist. LEXIS 130309, at *8–9. Here, the ALJ's decision does not adequately discuss the supportability factor when evaluating Dr. Nzegwu's medical opinions, and the Court accordingly cannot readily conduct a meaningful review.

The ALJ's omission of this portion of his analysis, required by 20 C.F.R. § 416.920c(b), is not harmless error. "An ALJ's failure to follow procedural rules may

11

be considered harmless error only when 'concrete factual and medical evidence' is 'apparent in the record' and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled." *Anderson v. Comm'r of Soc. Sec.*, 2012 WL 3139777 at *1, 2012 U.S. Dist. LEXIS 106855 at *4 (W.D. Mich. Aug. 1, 2012) (citing *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657–58 (6th Cir. 2009). A Sixth Circuit has opined that, even if the Court "were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with [social security regulations] as harmless error." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004)). The ALJ's supportability determination impacts the persuasiveness of that opinion. It follows then that, "[h]ad the ALJ correctly addressed the supportability [of Dr. Nzegwu's opinions], he may have found them equally or more persuasive than other medical opinions." *Terhune*, 2022 WL 2910002, at *5, 2022.

## IV. CONCLUSION

"It is not the role of a reviewing court to comb the record and imagine manifold ways in which the factors could have been applied to the evidence that was presented." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021). The Court can only speculate whether a comprehensive supportability analysis by the ALJ could have led to a different RFC and, consequently, a different disability determination. For this reason, remand is required for the ALJ to sufficiently explain how he considered the supportability and resultant persuasiveness of Dr. Nzegwu's medical opinions when determining Eckert's RFC. Accordingly,

**IT IS ORDERED** that:

1. The above-styled action is **REMANDED** to the Commissioner for further proceedings so the ALJ can fully evaluate the supportability of Dr. Nzegwu's medical opinions and their resultant persuasiveness in compliance with Social Security regulations;

2. Defendant's Motion for Summary Judgment is **DENIED** without prejudice; and

3. Plaintiff's Motion for Summary Judgment is **GRANTED** insofar as the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

Entered this 28th of February, 2024.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY